IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROCK AIRPORT OF PITTSBURGH, LLC,

  Appellant,

    v.

MANAGEMENT SCIENCE ASSOCIATES, INC.,

  Appellees.

14cv1195
**ELECTRONICALLY FILED**

Bankruptcy No. 09-23155-CMB
Chapter 11

**MEMORANDUM OPINION**

  Before the Court is Appellant/Debtor's (hereinafter "Rock Airport's") Appeal from the Bankruptcy Court's Order dated August 8, 2014, filed at document number 832. See Bankruptcy No. 09-23155-CMB, doc. no. 832. In this Appeal, Rock Airport contends that Appellee (hereinafter "MSA") did not have standing to file a plan of reorganization in the bankruptcy case. See doc. no. 6. MSA counters that Rock Airport's appeal has been rendered moot by two subsequent Bankruptcy Court Orders, both entered on September 16, 2014, the first of which confirmed the Trustee's plan of liquidation, and the second which approved the sale of Rock Airport's assets free and clear of all liens, claims, and encumbrances.[1] See doc. no. 7.

**I. Jurisdiction and Standard of Review**

  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). A District Court sits as an appellate court in bankruptcy proceedings. *In re Michael*, 699 F.3d 305, 308 n.2 (3d Cir. 2012).

---

[1] MSA also contends, secondarily, that it should prevail on the merits as well. The Court concurs that this Appeal is moot for the reasons stated *infra.*, and because the Court finds this matter moot, it will not address the substantive issue raised by Rock Airport.

The standards of review that apply to this case are as follows:

First, this Court cannot disturb the factual findings of a bankruptcy court unless they are clearly erroneous. *In re Gray*, 558 Fed. Appx. 163, 166 (3d Cir. 2014); see also *Accardi v. IT Litig. Trust (In re IT Group, Inc.)*, 448 F.3d 661, 667 (3d Cir. 2006). A factual finding is "clearly erroneous" if the reviewing court is "left with a definite and firm conviction that a mistake has been committed." *In re W.R. Grace & Co.*, 729 F.3d 311, 319, n.14 (3d Cir. 2011); see also *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 201 (3d Cir. 2005). Under the clearly erroneous standard, it is the responsibility of an appellate court to accept the ultimate factual determinations of the fact-finder unless that determination is either: (1) completely devoid of minimum evidentiary support displaying some hue of credibility or (2) bears no rational relationship to the supportive evidentiary data." *DiFederico v. Rolm Co.*, 201 F.3d 200, 208 (3d Cir. 2000) (citations omitted).

Second, this Court exercises plenary, or *de novo*, review over any legal conclusions reached by the bankruptcy court. *In re Ruitenberg*, 745 F.3d 647, 650 (3d Cir. 2014); see also *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999).

Third, if the Bankruptcy Court's decision is a mixed question of law and fact, this Court must break down the determination and apply the appropriate standard of review to each. *In re Montgomery Ward Holding Corp.*, 326 F.3d 383, 387 (3d Cir. 2003). The Court should "apply a clearly erroneous standard to integral facts, but exercise plenary review of the court's interpretation and application of those facts to legal precepts." *In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3d Cir. 2011) (citation omitted).

Finally, this Court reviews a bankruptcy court's exercise of discretion for abuse. *In re Friedman's Inc.*, 738 F.3d 547, 552 (3d Cir. 2013). A bankruptcy court abuses its discretion

when its ruling rests upon an error of law or a misapplication of law to the facts. *In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999).

**II. Factual and Procedural Background**

Because this Court has written several extensive Opinions this year in several related cases – see case nos. 14-cv-0085 (Court Opinion at doc. no. 6), 14-cv-0086 (Court Opinion at doc. no. 6), 14-cv-0091 (Court Opinion at doc. no. 12), 14-cv-1105 (Court Opinion at doc. no. 3), and 14-cv-1314 (Court Opinion at doc. no. 4) – it will not belabor the underlying facts.

The relevant facts of importance to this appeal are as follows:

This Appeal was taken from a Bankruptcy Court Order that denied in part Rock Airport's Motion for Limited Reconsideration of a prior (July 21, 2014) Order that had approved MSA's Amended Disclosure Statement to Accompany Plan, and simultaneously scheduled a plan confirmation hearing. See doc. no. 832 in Bankruptcy docket no. 09-23155-CMB, (hereinafter "Order Number 832"). The Bankruptcy Court's July 21, 2014 Order held that MSA had standing to advance its own Reorganization Plan, and Rock Airport's Motion for Reconsideration of that Order, sought clarification as to MSA's standing.

The Bankruptcy Court, in Order Number 832, began by acknowledging that Rock Airport's Motion for Reconsideration sought clarification of the Bankruptcy Court's July 21, 2014 Order to the extent it "implicitly" ruled that MSA had standing to prosecute its own Reorganization Plan. See doc. no. 832 in Bankruptcy docket no. 09-23155-CMB, p. 2. The Bankruptcy Court noted that it held a hearing on this Motion for Reconsideration on August 6, 2014, and entered Order Number 832, granting Rock Airport's request for clarification. The Bankruptcy Court "clarified" its prior (July 21, 2014) Order by "explicitly" ruling that MSA was

a party in interest. As such, the Bankruptcy Court denied Rock Airport's Motion for Reconsideration, because as a party in interest, MSA had standing to prosecute its own Reorganization Plan.

In reaching this two-part decision, the Bankruptcy Court explained its reasoning as follows:

> . . . MSA has been extremely involved in this bankruptcy case for several years and litigation between the parties predates the bankruptcy case. In addition, the Debtor's Plan contemplates future litigation against MSA which Debtor asserts may assist in the funding of its plan. Thus, as MSA is contemplated as a potential source of funding for Debtor's Plan, MSA asserts an interest in the outcome of these proceedings. Given the history of the case and potential for future litigation between the parties, it is unsurprising that MSA seeks a role in this stage of the case.
>
> As described in the MSA Disclosure Statement, the Trustee entered into an asset purchase agreement with Alaskan Property Management Company ("Alaskan"), an entity with common ownership to MSA. Based upon that agreement, the Trustee filed a motion to sell substantially all of the Debtor's assets to Alaskan. The plan proposed by MSA adopts the purchase agreement. Both the Trustee's motion to sell and MSA's Plan are scheduled for hearing on August 21, 2014, along with the Debtor's Plan.
>
> Among the multiple disputes between the parties, MSA contends that Debtor has failed to address environmental issues at RockPointe thereby impacting its ability to develop its own property. While it is apparently acknowledged by the parties that environmental issues exist at RockPointe, each party accuses the other of being the cause of such problems. Although the Court makes no determination of the source of the problems, MSA certainly has an interest as a property owner at RockPointe in seeing said problems resolved. MSA seeks to accomplish this through MSA's Plan as it is not satisfied that the Debtor will resolve the issues. Similarly, MSA raises concerns regarding the disposal of fly-ash on the property under Debtor's Plan, and the Court finds these concerns may be warranted as MSA is an owner of property at RockPointe.
>
> Most notably, however, this Court finds that MSA has a legal stake in the outcome of these proceedings based upon what is likely the most hotly contested issue between the parties, which is the need for an easement on Debtor's property to permit MSA to transition its electrical service to

> West Penn Power. This Court's Memorandum Opinion dated December 3, 2013, thoroughly addressed this particular dispute between the parties. Consistent with that Opinion, the Court ordered the parties to cooperate in moving forward with the transition, which included the granting of an easement to accomplish the necessary result. That decision was appealed by the Debtor. Although affirmed by the District Court, the matter has been appealed to the Court of Appeals for the Third Circuit. In the meantime, MSA's transition of electrical service to West Penn Power is in jeopardy. Meanwhile, MSA is forced to pay RPP, LLC, an affiliate of Debtor, for electrical service pending the transition. If Alaskan is able to purchase the property pursuant to the MSA Plan, MSA will likely no longer be faced with the Debtor's resistance to providing the easement. Significant funds are at stake for MSA until it is able to accomplish this transition to West Penn Power. Furthermore, MSA has a clear interest in obtaining a stable, sufficient source of electricity for its business, unaffected by its contentious relationship with the Debtor and RPP, LLC.
>
> Accordingly, for these reasons, this Court finds MSA to be a party in interest under §1121(c) as MSA is a creditor and as it has otherwise shown a sufficient stake in this case. MSA has demonstrated significant interests that could be affected by this proceeding and Debtor's Plan. Furthermore, it is this Court's belief that proceeding with two competing plans of reorganization is in the best interest of the creditors in this case.

Id., pp. 4-6 (footnote omitted).

Rock Airport now moves this Court to find that the Bankruptcy Court erred in determining that MSA had standing. See Brief of Appellant filed at doc. no. 6, p. 2. MSA counters by arguing that (1) this Appeal is now moot due to subsequent developments that transpired in September through the Bankruptcy Court proceedings; and (2) even if this Court were to consider the substantive arguments raised by Rock Airport raised in this appeal, the Court would have to conclude that the findings of the Bankruptcy Court were not clearly erroneous, and the legal conclusions drawn from those facts were properly drawn. As noted above, the Court concurs that because of events which have transpired since the filing of this Appeal in the Bankruptcy Court, this Appeal is now moot, and the Court need not address the substantive arguments and counter-arguments raised by the parties.

**III. Discussion**

The Court begins its analysis by noting that on September 16, 2014, the Bankruptcy Court, after holding the appropriate hearings: (1) confirmed the Trustee's Plan of Reorganization; (2) granted final approval of the Amended Disclosure Statement filed by MSA; (3) confirmed the Trustee's chapter 11 plan of liquidation; and (4) granted the Trustee's Motion to sell Rock Airport's property free and clear of liens.[2] See Bankruptcy docket 09-23155-CMB, at doc. nos. 1030, 1036-1037.

On September 29, 2014, this Court upheld the decision of the Bankruptcy Court declining to stay the sale of Rock Airport's assets. See doc. no. 4, in case no. 14-cv-1314. In affirming the decision of the Bankruptcy Court, this Court applied a four-part preliminary injunction test, and found that the Movant, Rock Ferrone, failed to meet any one of the four parts.[3] Accordingly, the Court agreed with the Bankruptcy Court that the sale of Rock Airport's assets should proceed.

The following day, on September 30, 2014, the United States Court of Appeals for the Third Circuit denied Rock Ferrone's "Motion to Interim Stay" pending the Court of Appeals' consideration of his appeal. See text order entered on September 30, 2014, in docket no. 14-cv-1314.

This Court has reviewed the Bankruptcy Court's docket and notes that on September 30, 2014, a Report of Sale, which included a copy of the HUD-1 Settlement Statement, was filed.

---

[2] Of particular interest to Rock Ferrone, was the Rock Built Building. The Bankruptcy Court through a series of hearing and rulings, determined that the Rock Built Building was owned by the Debtor, Rock Airport, and thus, it became part of the assets which were sold under the sale Motion. See doc. no. 4, in docket number 14-cv-1314, pp. 5-6, fn. 1.

[3] The Court adopts its analysis set forth on pages eight through eleven of that Memorandum Order as if the same were more fully set forth herein. See doc. no. 4, filed in case no. 14-cv-1314.

See doc. no. 1074 in Bankruptcy docket number 09-23155. This Report confirms that "[a] closing was held on September 30, 2014, in connection with the sale of the Property (as defined in the Asset Sale and Purchase Agreement entered into between Natalie Lutz Cardiello as Trustee for the Debtor and Alaskan Property Management Company, LLC on March 6, 2014), including real property . . . ." Id. The sale price recorded was $9,000,000.00. Thus, the sale of Rock Airport's real property has taken place.

It is clear to this Court that the Bankruptcy Court had three reorganization plans to choose from: the Trustee's Plan, Rock Airport's Plan, and MSA's Plan. The Bankruptcy Court chose the Trustee's plan, and upon executing that Plan, sold Rock Airport's assets for nine million dollars. The Court finds that the sale of the assets (including the real property) and the Court's decision to implement the Trustee's Plan, not MSA's Plan, renders this appeal filed by Rock Airport moot.

Moreover, both parties to the instant matter – Rock Airport and MSA – contemplated that the Bankruptcy Court could choose to implement the Trustee's Reorganization Plan and thereby render this appeal moot. Shortly after filing this appeal, Rock Airport and MSA filed a "Stipulation and Agreed Order Regarding Briefing Schedule" which requested an extension to the Brief filing deadlines in this case and set forth in relevant part:

> WHEREAS, Appellant Rock Airport's Briefs in the two (2) pending appeals are to be filed on or before September 18, 2014;
>
> WHEREAS, a sale of Rock Airport assets has been approved, but not yet confirmed, by the Bankruptcy Court;
>
> WHEREAS the Plans of Reorganization of both Rock Airport and MSA remain pending but will likely become moot upon confirmation of the sale of Rock Airport assets;

> WHEREAS, the Bankruptcy Court has scheduled a continued hearing on the confirmation of the sale for September 15, 2014 if a consensual order regarding confirmation of the sale is not submitted first;
>
> WHEREAS, confirmation of the sale **would not only likely render the pending Plans of Reorganization moot but, further, would likely render the two (2) appeals pending in this Honorable Court moot as well**[.]

Doc. no. 4, p. 2 (emphasis added).

## IV. Conclusion

The Court finds based on the foregoing that the instant Appeal is now moot, and will dismiss this Appeal accordingly.

s/ Arthur J. Schwab<br>
Arthur J. Schwab<br>
United States District Judge

cc:   All Registered ECF Counsel and Parties